**Donald G. GOODWIN, Plaintiff,**

v.

**The UNITED STATES of America et al., Defendants.**

**Civ. No. 71-432-CW.**

United States District Court, S. D. California.

April 25, 1972.

Amended Findings July 12, 1972.

Ross M. Pyle, San Diego, Cal., for plaintiff.

Keith E. McWilliams, San Diego, Cal., for defendants.

## MEMORANDUM OPINION

WALLACE, District Judge.

The evidence is persuasive that the best method to protect the public from diseases which can be transmitted through clams is to be sure the growing beds are free of contaminants. Therefore, the National Shellfish Sanitation Program is an appropriate means to meet this need. I am not convinced, however, that 21 U.S.C. § 381(a) gives the Food and Drug Administration the power to implement it. I agree that the term "or otherwise" could be interpreted to mean the water certification program. However, the statute clearly requires that it must appear that there are unsanitary conditions or the article is adulterated. The lack of certification merely means that the Food and Drug Administration does not know because the waters have never been tested. If the situation is unknown, by simple definition it may not appear to be one way or the other.

The Government's position is laudable, but its petition should be to the Congress for amendment, rather than to the courts.

However, under the present facts, this Court cannot say that the Food and Drug Administration is acting arbitrarily or capriciously in preventing the clams of the plaintiff from being imported from the particular growing beds involved and with the added facts elicited at trial, a permanent injunction would not be appropriate. It is, therefore, unnecessary for me to pass upon whether or not the Food and Drug Administration has authority to implement the National Shellfish Sanitation Program.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The above-entitled matter having come on regularly for hearing, on the application of the plaintiff for permanent injunction, on the 13th and 14th days of April, 1972, before the Honorable J. Clifford Wallace, United States District Judge, Ross Pyle having appeared as counsel for the plaintiff, Donald Goodwin; Harry D. Steward, United States Attorney, Keith E. McWilliams, Assistant United States Attorney, having appeared as counsel for the defendants, testimony having been presented, and the matter having been argued orally and upon written memoranda; the Court being fully advised in the premises makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff is an American citizen who for the past two and one-half years has been engaged in the regular importation of live clams into the United States from Mexican waters in the Gulf of California.

2. Plaintiff's live clams, once imported, have been distributed for human consumption to various markets and restaurants on the West Coast of the United States.

3. During the two and one-half years of operation, plaintiff's live clams have been frequently tested by the Food & Drug Administration for presence of E. Coli bacteria and have been allowed to be released in the open market for sale for human consumption.

4. Between September 22, 1971, and November 2, 1971, the United States Food & Drug Administration issued notices of detention pursuant to 21 U.S.C. § 381 against five lots of live clams offered for import by plaintiff Donald G. Goodwin.

5. The basis for each detention was that the clams were prepared, packed or held under insanitary conditions whereby they may have been contaminated with filth and were adulterated within the meaning of 21 U.S.C. § 342(a)(4) in that they came from uncertified waters.

6. The Food & Drug Administration, during the summer of 1971, informally established a policy, which was implemented in this area in September, 1971, which bars the importation of shellfish from any waters of a foreign country

which are not from "certified" waters. This policy has been voluntarily stayed by the FDA as to this plaintiff since the Court's order of December 6, 1971, pending further order of Court.

7. United States, Japan, and Canada have entered into reciprocal certification programs whereby waters within those territorial boundaries are subject to testing and certification, which comply with federal standards as set forth by the National Shellfish Sanitation Program. Waters of nations who do not participate in this program are regarded as uncertified waters.

8. Live clams can be carriers of certain diseases. There are now established tests which can determine the presence of E. coli bacteria in said live clams. The presence of a high level of E. coli bacteria in laboratory tests of live clams may indicate that the clams have been grown under insanitary conditions in waters which were contaminated with human fecal material.

9. The presence of a low level of E. coli bacteria in laboratory tests of live clams does not preclude the possibility that the clams tested are carriers of certain viral diseases including, but not limited to, infectious hepatitis, typhoid, salmonellosis and possibly polio.

10. Of the five loads of live clams initially detained by the Food & Drug Administration in September of 1971, one lot, which was sampled by the Food & Drug Administration, was found to contain too high a count of E. coli bacteria to meet the former standards of the Food & Drug Administration. The testing of the one defective load occurred approximately three months after said load had been imported into the United States.

11. Live clams can be carriers of infectious viral hepatitis, typhoid, salmonellosis, certain forms of gastroenteritis and possibly polio.

12. The National Shellfish Sanitation Program is a cooperative program administered by the Food & Drug Administration which involves 23 shellfish-producing states, the shellfish industry, and, through international agreement, Canada and Japan. That this program is designed to provide necessary sanitary controls over both fresh and frozen shellfish, including clams, that are shipped in interstate commerce.

13. Approximately 20 percent of the waters bordering the United States in which shellfish are grown are presently restricted from being certified through the National Shellfish Sanitation Program because of pollution or other factors rendering them unsuitable for the production of shellfish, which may be safely consumed.

14. California is a participating member of the National Shellfish Sanitation Program. California prohibits the importation, into California, of shellfish from domestic waters which are not certified, but has refused to prohibit the importation of shellfish from foreign uncertified waters on the grounds that the control of such shellfish is solely within federal jurisdiction.

15. There is no known test to determine whether shellfish, including clams, are carriers of infectious hepatitis or typhoid.

16. There are tests which can be performed to determine whether shellfish, including clams, are carriers of salmonellosis and possibly typhoid, but these tests do not provide a feasible approach to protection in that they are costly, incomplete and/or destroy the marketability of the product.

17. Compliance with the requirements of the National Shellfish Sanitation Program is currently the most effective method of monitoring the commercial distribution of shellfish, including clams, to ensure that the public health danger associated with the consumption of contaminated shellfish is minimized.

18. There have been serious outbreaks of infectious hepatitis, typhoid, and gastroenteritis, associated with the consumption of contaminated shellfish, which outbreaks have been documented

in the scientific literature. These outbreaks include two which were caused by shellfish from domestic certified waters. These outbreaks of disease were traced to the improper certification of waters, which should not have been certified as suitable for shellfish production.

19. The importation and commercial distribution of clams from foreign uncertified waters creates a substantial possible public health danger to the American consumer.

20. Shellfish are known potential carriers of bacterial and viral organisms which may cause typhoid, gastroenteritis and viral hepatitis. There is a high incidence of typhoid, gastroenteritis and viral hepatitis in Mexico due to the generally unsanitary conditions prevailing there.

From the foregoing findings of fact, the Court makes the following conclusions of law.

## CONCLUSIONS OF LAW

1. The United States Food & Drug Administration has authority to bar the importation of all shellfish (including clams) which appear from examination of such shellfish, or otherwise, to have been manufactured, processed, or packed under insanitary conditions, or to be adulterated in that they may be injurious to health. 21 U.S.C. § 381(a); 21 U.S.C. § 342(a)(4).

2. The Food & Drug Administration is not required to find that each shellfish is actually contaminated prior to barring its importation from a foreign country; rather, it is sufficient that the shellfish appear to have been grown or processed under insanitary conditions, which conclusion may be derived from an examination of the shellfish or otherwise. 21 U.S.C. § 381(a).

3. The parties have not raised the issue of whether the plaintiff exhausted the administrative remedies available to him before bringing this suit. However, it does appear to this Court that he did so.

4. This Court has jurisdiction to review the issue of whether the Food & Drug Administration acted arbitrarily or capriciously in deciding to bar the importation of all shellfish from foreign uncertified waters. Sugarman v. Forbragd, 405 F.2d 1189 (9th Cir. 1968).

5. The action of the Food & Drug Administration in barring the importation of live clams from uncertified foreign waters was not an arbitrary or capricious act, in that it appears that such clams may be injurious to health and this method provides the best protection for the public. The question is whether there is statutory authority to do so.

6. Although this Court has jurisdiction to decide, given the circumstances of this case, it is unnecessary to determine whether the importation of shellfish from countries other than Japan and Canada can be barred by the Food and Drug Administration on the ground that the condition of such waters is unknown and thus, 'not certified' and whether it, therefore, 'appears' from methods other than examination that the shellfish were grown; harvested or packed under insanitary conditions or are 'adulterated.' See 21 U.S.C. §§ 381(a) and 342(a)(4).

7. In this case, from the combined factors of (1) the presence of E. coli bacteria in the detained loads showing that the beds from which plaintiff's clams are harvested are in proximity to possible fecal contamination, (2) the general lack of sanitary conditions and the high incidence of gastroenteritic diseases and of viral hepatitis in Mexico, and (3) the uncertainty as to a potential of danger because the waters are not certified, I cannot hold that it was an arbitrary or capricious determination that it "appears" the clams in question were grown under insanitary conditions or were "adulterated" pursuant to 21 U.S.C. § 381(a).

8. The Food and Drug Administration is not estopped to prevent plaintiff from importing clams.